### WOOD v. HALL et al.

#### (Supreme Court, Special Term, Albany County. June 28, 1894.)

WILLS—RIGHTS OF LEGATEES.

Testator directed the income of his estate to be applied to the support of his wife and daughter for life, and provided that the principal might be used for that purpose in case said income should be so diminished as to be insufficient for such support "by reason of any unexpected losses, or other unforeseen contingency." *Held*, that the application of the principal to the support of the wife and daughter was not authorized in case the income should be insufficient to support them in the manner in which testator supported them while he was living, but only in case the income should be so diminished as not to afford them a comfortable support.

Action by Adaline Wood, as executrix and trustee, against Albert E. Hall and others.

Mead & Hatt, for plaintiff.
Jerome & Nason, for defendants.

HERRICK, J. The report of the referee in this matter is reversed, both upon the facts and upon the law, and the plaintiff is charged personally with all expenditures made by her in excess of the income of the estate. The amount allowed for legal services in these proceedings and in preparing the account therein is reduced to $250. The testator directed the investment of his estate in interest-bearing securities, and that the income therefrom should be directed to the support of the plaintiff and his daughter, Maria Louisa, and after their death he provided for the division of his estate among certain residuary legatees named by him. The testator further provided as follows:

"In case that it shall be necessary to the suitable and proper support and maintenance of either my said wife, Adaline, or my said daughter, Maria Louisa, or both, to devote or to apply any part of the principal of my said residuary estate so by me directed to be invested as aforesaid to the use, support, and maintenance of them, my said wife and daughter, or either of them, by reason of any unexpected losses, or other unforeseen contingency, by which said income might be so diminished as to be insufficient for the comfort and suitable support and maintenance of my said wife and daughter, that then and in such case my said executor and executrix, as such trustees as aforesaid, are authorized so to use and apply such portion of the said principal as shall or may so become necessary for the comfort, support, and maintenance of my said wife and daughter, or either of them."

The testator's meaning seems to me very plain. It was that the principal of the estate should only be resorted to to support his widow and daughter when the income from it should be diminished by "unexpected losses, or other unforeseen contingency." He did not

mean by that that the principal could be resorted to if the income proved insufficient to support them in the manner he was supporting them, when he had not only the same principal to draw from, but also the income arising from his business and business efforts and labors. Such diminution of income is not one that would come within the definition of "unexpected losses, or other unforeseen contingency." This matter has already been before the court, and was then returned by me to the referee for a rehearing, upon the ground that the evidence did not show that the expenditures made by the plaintiff were necessary for the support of herself and her daughter. The additional evidence taken on the rehearing is insufficient to satisfy me that the expenditures made by her were necessary. A number of highly respectable witnesses gave testimony as to what it would cost to support the plaintiff in the station in which she is living, and the testimony that was received as to her expenditures seems to have been received and considered upon what appears to me to be an entirely erroneous theory. That theory can best be illustrated by two questions propounded to the plaintiff upon the hearing, and her answers thereto:

"Q. Could you have supported and maintained yourself and daughter upon the income from this estate each year, as it appears in your account, in that comfort and manner of living and enjoyment of life in which you and she had been accustomed during the lifetime of your husband? Ans. I could not. Q. Could you have supported and maintained yourself and daughter each year mentioned in the account, in the comfort and enjoyment and in the manner of living in which you and she had lived in the lifetime of your husband, for any less than you have expended, as shown by your account? Ans. No."

The witnesses who were called were shown to be familiar with the society in which plaintiff moved, and her manner of living and entertaining, and they gave their opinion as to about what it would cost per annum to support and maintain her in that manner of living. The husband of plaintiff was a business man, who during his lifetime conducted quite a large business, and his income for the last 10 years of his life, as testified to by the plaintiff, would average at least $8,000 a year; and she says her expenditures during his lifetime for maintaining the family were about $5,000 a year. He left an estate, which, after the payment of debts, amounted to about $27,000, and which has produced on an average an annual income of about $1,400. With this estate the plaintiff seems to think that she is justified in attempting to maintain the same style of living and expenditure that she did during her husband's lifetime, when his income was $8,000 a year; and, as a result of that effort, the estate has melted away from $27,000 to $15,000 since the year 1882. Counsel attempt to justify these expenditures as necessary to maintain her in her position in life. Courts have frequently allowed expenditures of money from trust estates, and measured those expenditures by the position in life of the parties for whose benefit they were to be made, and the manner in which they had been accustomed to live; but such allowances have been made where the income arising from the estate was such as to permit of such expenditures being made, and I know of no case where the

courts have directed such expenditures to be made from the principal of an estate where the income, although abundant to furnish the necessaries and comforts of life, was not sufficient to meet the expenditures necessary to be made in supporting the beneficiary in the style and manner of living to which he or she had theretofore been accustomed. The question is, not what is necessary to maintain her in her present style of living, but whether it is necessary for her to live in the style and manner she is living, and whether, under all the circumstances, she is justified in living in such a style and manner as require her to expend more than the income of the estate. It seems to me that it should need no argument to satisfy any reasonable person that the widow of a person receiving an income of $8,000 a year during his lifetime is not justified, upon any theory of maintaining the position in which she had been accustomed to live, in keeping up the same, or approximately the same, expenditures, when she is left with an estate of only $27,000, and an income of $1,400. So far as her position in life is measured by money, she is not in the same position that she was before her husband's death; and, so far as her social position depends upon money, she must readjust that social position to her changed financial condition. The income of the estate is sufficient, without encroaching upon the principal, to furnish a decent and respectable living to the plaintiff and her daughter during their entire lives, leaving then the principal to the residuary legatees. In endeavoring to maintain their former position and style of living, the plaintiff has so decreased the estate that in a very few years there will be neither income nor principal of the estate left, and the plaintiff and her daughter will be a charge upon the community, or upon her friends, and the residuary legatees will be deprived of that which the testator intended they should receive. The plaintiff's pecuniary condition has been changed by her husband's death, and she should change her manner of life to meet such changed condition. Her present position in life is not what it was, and her expenditures are to be measured by her present position not by her former.

I have refused to allow the sum set forth in her account for counsel fee in preparing this account and conducting these proceedings for several reasons,—one, that I think it too large for the services rendered; another, that it seems to me that the charges made by attorneys for services in trust estates are growing too burdensome, and are larger than would be paid for the same service rendered for a business man in relation to his personal affairs; another, that the plaintiff is defeated in the only matter upon which there has been any contest, and it has not been the policy of our law to grant the defeated party in a litigation costs, and I have never seen any reason why an exception should be made to that rule where the litigation is over an estate. I have serious doubts whether the whole charge should not be disallowed, but have concluded that perhaps, under all the circumstances, and considering what it has been customary to do in relation to trustee's accounts, it is better to allow the amount I have indicated. Let an order be entered pursuant to this memorandum.