EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of John A. Montgomery, Jr., deceased,

*vs.*

MARGERY PYLE MONTGOMERY and MARGERY MONTGOMERY POPE.

*New Castle, November 2, 1945.*

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*John J. Morris, Jr.,* of the firm of Hering, Morris, James, & Hitchens, for Margery Pyle Messelt, a defendant.

*Clarence A. Southerland,* of the firm of Southerland, Berl & Potter, for Margery Montgomery Pope, a defendant.

PEARSON, Vice-Chancellor: This suit for construction grows out of a demand by the testator's widow, a beneficiary of a trust of his residuary estate, made against the complainant, the trustee under the will. Because of increased income taxes during the war years, the widow finds that she has less income to spend for living expenses than she had before. The point for construction is whether provisions of the will concerning invasions of trust corpus authorize the trustee to comply with her demands for payments from the corpus.

The testator died in November 1932. By his will, he gave his household furniture and personal effects to his wife, a legacy to each of two sisters, and the residue of his estate in trust. The terms of the trust include the following:

"(1) To permit my wife, being my widow, to occupy my residence at the time of my death as a family home for herself and our children, free of rent, taxes, insurance, and all other charges of upkeep and maintenance so long as she shall desire to occupy the same as such. But if my wife, being my widow, shall desire to change her home my trustee is authorized, upon her written request to sell my residence, publicly or privately, for cash or on time, upon such terms as to it shall seem best, and to apply the proceeds or the neces-

sary part thereof to the acquisition by purchase or exchange or lease of another residence suitable to her wishes, adding any surplus to my general trust estate. My trustee is authorized to make such substitutions from time to time as shall seem to it to be necessary or advisable to provide a suitable home for my wife, being widow, and such of our children as she shall desire to have make their home with her. After the death or remarriage of my wife, my trustee shall treat my residence, or any substitute therefor, as a part of my general trust estate:

"(2) To pay over the net income monthly or quarterly or as often as (in the judgment of my trustee) her needs shall require, at least once a year, to my wife during her life or widowhood for the support of herself and the support and education of our children; * * *."

The will provides that in the event of the remarriage of the widow, she shall be entitled to the income from one-half of the estate for the remainder of her life, the income from the other half (and after the widow's death, from the entire estate) is for the benefit of any children of the testator. Thereafter, the trust corpus is distributable upon the death of each child in accordance with the will of such child, or if there be no will, then to the child's issue, or if there be no issue, to the testator's next of kin. The will further provides:

"(5) If the income from my trust estate, together with their income from other sources, shall for any reason—whether illness or accident or misfortune or emergency of any kind, or even on account of diminution of income—not be sufficient comfortably to support my wife, being my widow, and children and reasonable to educate my children (including college, professional, and technical training), I authorize my trustee, in the exercise of its sound discretion, to use enough of the principal for these purposes, to the end that my estate may be of the most good to my wife, being my widow, and children. I request that my trustee will pay to my wife, out of the income of my estate and out of the principal if necessary, the sum of Five Hundred Dollars ($500.00) per month for her immediate needs between the interval of the date of my death and the date of the establishment of the trust for her benefit."

Upon the settlement of the estate, the complainant as trustee received from the executor in September 1933 cash

and securities having an inventory value of $453,886.12. The testator's residence was appraised at $40,000. The approximate value of the trust estate on April 30, 1945, excluding the value of the residence, was $583,606.01.

The widow continued to live in the residence after her husband's death. The daughter married in November 1942. She does not reside with her mother. The following table shows amounts of the widow's income from the trust, and from all sources, and the sum remaining after deducting her federal and state individual income taxes on her total income for each year from 1934 to 1944, inclusive:

| Year | Income from Trust | Income from All Sources | Total Income Less Income-Taxes |
|---|---|---|---|
| 1934 | $24,088.68 | $30,234.55 | $26,391.73 |
| 1935 | 26,510.43 | 30,906.10 | 27,429.43 |
| 1936 | 29,898.58 | 35,329.67 | 29,694.79 |
| 1937 | 29,562.69 | 32,153.61 | 27,348.69 |
| 1938 | 25,401.76 | 30,757.80 | 26,262.79 |
| 1939 | 27,534.95 | 32,056.52 | 27,279.87 |
| 1940 | 29,713.76 | 35,363.57 | 26,988.03 |
| 1941 | 28,002.08 | 31,662.82 | 20,973.22 |
| 1942 | 25,948.49 | 30,155.92 | 26,783.44* |
| 1943 | 22,423.50 | 29,754.03 | 16,488.65 |
| 1/1/44–10/23/44, Inc.** | 19,490.27 | 22,633.46 | 14,841.89 |
| 1944 (all) | 22,834.83 | 27,809.05 | 18,235.93 |

*The federal tax deducted for 1942, as for all other years in the table, is the total amount payable with respect to income for that year (regardless of when payment of the tax was actually made or required to be made), and thus represents the so-called "unforgiven" part of the tax which would have been payable on 1942 income but for the "forgiveness feature" of the pertinent Revenue Act.

**This period is the portion of the year prior to the widow's remarriage.

The daughter has property of her own which produces a yearly income of approximately $12,000 before taxes.

On May 3, 1944, the widow wrote the trustee, stating:

"I find that the income which I receive as beneficiary of the estate of my husband, John A. Montgomery, Jr. together with my income from all other sources does not provide sufficient funds for my comfortable support.

"I am attaching hereto a schedule showing income received from the trust estate since its inception, income received from all other sources, federal and state income tax on this income and net amount remaining to me. You will note that during the past few years the amount remaining to me, after deduction for taxes, is very much lower than that in prior years. This amount, especially in view of increased cost of living, is definitely not sufficient to enable me to live in the same manner that my husband and I lived and which I have lived since being beneficiary of his estate. During the years 1934 to 1944 the income from the trust together with my other income was sufficient to enable me to live comfortably in the same station of life which my husband and I have always lived. During these years my income averaged $25,000. * * *

"I therefore request that the bank immediately pay to me the sum of $10,000 yearly this sum being the difference between my net income, after taxes, for 1943, as shown on the attached schedule and my average income after taxes for the years 1934 to 1944. While this does not take into consideration the increased cost of living, it will enable me to live out of income with some economies, in approximately the same manner that my husband and I lived and in which I have lived since the establishment of the trust."

The trustee brought this bill for construction of the will "so that complainant may know the proper basis upon which its discretion should be exercised in respect of the request of the defendant, Margery Pyle Montgomery, for the payment to her of a portion of the trust estate."

The daughter answered the bill asserting that neither the facts nor the law justify the invasion of the trust corpus. From the widow's testimony and from a stipulation, it appears that during the years 1941 to 1944, she expended for living expenses not only her income, but also the aggregate amount of $29,506 from the principal of her individual funds, including the sum of $11,400 which she borrowed in June and September 1944, and for which she

is still indebted. She asks for reimbursement in the amount of $29,506 (but does not claim any part of the corpus for the period following her remarriage). The daughter has indicated that she makes no objection to a distribution from the trust corpus of an amount sufficient to repay the above indebtedness of the widow.

In contrast with the unconditional directions to make periodic distributions of income, the power under the quoted provision to make distributions from corpus is in terms conditional. The question is whether, under the circumstances, the conditions are fulfilled so that there is presented a case for the exercise of the trustee's discretion to invade, or not to invade, the corpus. In this connection, I shall assume without deciding, that payment by the widow of increased income taxes during the war years resulted in a "diminution of income" within the meaning of the will; and that she was not obliged first to exhaust her individual estate before she might properly receive payments from the trust corpus. We are thus primarily concerned with the language

"If the income * * * [of the wife and children from all sources] shall * * * not be sufficient comfortably to support my wife, being my widow, and children and reasonable to educate my children (including college, professional, and technical training), I authorize my trustee, in the exercise of its sound discretion, to use enough of the principal for these purposes, to the end that my estate may be of the most good to my wife, being my widow, and children."

As is apparent, the possible beneficiaries under these provisions are not only the testator's widow, but also any children he might leave. The purpose for which the distribution of corpus is demanded is not to repay expenditures made for the benefit of the testator's daughter. Indeed, of the total amount expended by the widow during the period in question, it does not appear that any substantial portion was for the daughter. The widow's position is that her income from all sources was not sufficient comfortably to support herself, and that, therefore, she should be reim-

bursed in the amounts of her living expenses in excess of income, for the purpose of her comfortable support. She contends that

"From the standpoint of common sense and under the authorities, *'comfortably to support'* means to support on a scale similar to the beneficiaries' accustomed scale of living." In her brief, the argument on this point begins thus:

"The following quotation from *Page on Wills* (*Lifetime Edition*), *Vol.* 3, *Section* 1170, is a terse statement of a principle which seems to have been universally accepted as sound, by the Courts and by the text-writers:

" 'A gift of support prima facie means support in the manner in which testator was accustomed to support his wife and family during his life.' "

Now, the widow testified that the average living expenses of her husband, herself and daughter amounted to $75,000 annually prior to her husband's death (without attempting to allocate the expenses among each of them). Under the present circumstances, it would be absurd to hold that the testator's language should be construed to authorize distributions of corpus sufficient to enable her to spend $75,000 a year, in order to maintain her "accustomed scale of living." Compare: *Wood v. Hall*, 29 *N.Y.S.* 672. None of the cases cited on behalf of the widow support such a holding. Despite references to "the same manner" and "the same station in life" in which she and her husband had lived, contained in her letter to the trustee, the widow does not now define her "accustomed scale" as living expenses in the amount her husband spent. She contends not for a scale established by the amount of expenditures to which she *had been* accustomed before his death, but rather for an amount to which she *subsequently became* accustomed during a period beginning in the second year after his decease (apparently, the first full calendar year of the operation of the trust), and continuing for seven years. In her letter to the trustee, she uses her average annual income during ten years ("1934 to 1944") as the criterion of her

"accustomed scale." If the ten-year period, instead of the seven-year period, were used to determine a basic average establishing her "accustomed scale," it would be difficult, to say the least, to support a claim for payments from the corpus to make up for deficiencies in annual income less than the average, for any of the years included in that period. This was for the reason that, as to income for years during the period used to determine the average, the total deficiencies for years in which the income fell short of the average would necessarily be exactly offset by the total surpluses for years in which the income exceeded the average. And yet, why not use a period of ten years rather than seven? Without further laboring the point, it seems plain that the asserted specification of her "accustomed scale" is arbitrary and unfounded.

Returning to actual language of the will, the construction of the expression "comfortably to support" may, of course, vary radically, depending upon the circumstances and context with relation to which it is used. Here, the trustee is entitled to construe it liberally and to exercise broad discretion in applying it, provided always that there exists some reasonable factual ground for such construction and application.

Since the trust became operative, the widow's least annual income, after taxes, available for living expenses, amounted to $16,488.65 (without treating the use of the residence "free of rent, taxes, insurance, and all other charges of upkeep and maintenance" as of any value as income). There are, obviously, no general standards of comfortable support requiring expenditures in excess of such least amount of income. Granted that in construing the testator's language, the needs, desires and habits of the person to be supported should be given weighty consideration, nevertheless, that does not justify an indulgence of every whim or caprice of the beneficiary. An important connotation of the expression is the idea of moderation. In

the Century Dictionary, Volume II, "comfort" is defined as

"A state of tranquil or moderate enjoyment, resulting from the satisfacton of bodily wants and freedom from care or anxiety; a feeling or state of well-being, satisfaction, or content. * * *"

In the same dictionary, "comfortable" is defined as

"Being in a state of ease or moderate enjoyment, as after sickness or pain; enjoying contentment and ease or repose. * * * Attended with or producing comfort; free from or not causing disquiet of body or mind: as, to be in comfortable circumstances. * * *"

The widow does not particularize goods and services of which she would have been deprived by keeping her living expenses within her income available to defray them. She does not explain in what respect she would not have been comfortably supported if she had not had the things, whatever they were, which the additional expenditures permitted. Instead, she attempts to make out a case for spending up to a limit fixed otherwise than with relation to any defined set of goods or services, demonstrated to be reasonably proper and appropriate for her "tranquil or moderate enjoyment" or "well-being, satisfaction, or content."

I find no justification for any invasion of the trust corpus, and the trustee should be instructed that the facts do not furnish an occasion for an exercise of the discretionary power conferred by the will.

A decree accordingly will be advised.