511 So.2d 936 (1987)
GULF NATIONAL BANK
v.
David STURTEVANT.
No. 56746.
Supreme Court of Mississippi.
August 19, 1987.
Rehearing Denied September 16, 1987.
*937 Alan E. Michel, Mize, Thompson & Blass, Gulfport, for appellant.
Jess H. Dickinson, Eaton, Cottrell, Galloway, Lang & Stone, Gulfport, for appellee.
Before HAWKINS, P.J., and PRATHER and ANDERSON, JJ.
ANDERSON, Justice, for the court:
This is an appeal from a decree of the Chancery Court of Harrison County, involving a dispute over the adequacy of payments to the beneficiary of certain trusts.
Margaret Coolidge Sturtevant, an elderly, well-to-do widow, set up two trusts for the benefit of her son David. One was a testamentary trust, providing that David should receive, every month, "a sum sufficient for his maintenance, comfort and medical expenses." She also set up The Margaret Coolidge Sturtevant Trust No. 1, which provided that after her death, payments to David in the "sole discretion" of the trust, but stipulated that the payments should never exceed $200.
Appellee Gulf National Bank (GNB) was made the trustee of both trusts, and was given "sole discretion" as to any payments made to David.
Mrs. Sturtevant died in 1979. David Sturtevant is currently unemployed and living in an apartment house in Los Angeles, the ambience of which can be deduced from its popular nickname  "Roach Haven." At the time of trial, disbursements from the testamentary trust were in the amount of $1,100 per month, of which $700 went directly to David and the balance to the IRS to pay off a tax lien which had been imposed against him. As for Trust No. 1, no payments had been made under it at all for two years.
In 1981 David filed a bill in the Chancery Court of Harrison County alleging that GNB was refusing to disburse adequate funds to him under the trusts. He sought construction of the trust instruments, a declaratory judgment as to his rights under them, and relief in the form of increased payments.
After hearing the evidence, the chancellor found that David could not live in "comfort" on $700 per month, and thus concluded that GNB had abused its discretion as trustee. He ordered GNB to pay David a lump sum from Trust No. 1 and to increase the monthly payments. GNB appeals, taking the position that the chancellor effectively disregarded the provision that disbursements were to be made in its "sole discretion."
The chancellor's findings, of course, are entitled to the usual degree of deference. They will be disturbed on appeal only if we conclude that he was manifestly wrong. E.g. Harkins v. Fletcher, 499 So.2d 773 (Miss. 1986); Dunaway v. Busbin, 498 So.2d 1218 (Miss. 1986); Spain v. Holland, 483 So.2d 318 (Miss. 1986).
The only real issue in this appeal is whether or not the chancellor erred by finding as a fact that David Sturtevant could not subsist "in comfort" on $700 per month. As the appellant's brief points out, it is well known that a trust must be administered according to the intent of the settlor. E.g, D'Evereaux Hall Orphan Asylum v. Green, 226 So.2d 725 (Miss. 1969); Reedy v. Johnson's Estate, 200 Miss. 205, 26 So.2d 685 (1946). In disputes concerning the amount disbursed under trusts, courts are very deferential to the trustee's judgment. However, in the present case, if the chancellor was right in finding the current payments cannot maintain David in "comfort" then as a matter of course, he was also right in finding the trustees abused their discretion, since in such a case they would be frustrating the settlor's obvious purpose rather than furthering it. Thus, the significance of the word "comfort" in the trust instruments becomes of decisive importance in determining whether or not the trustees adequately fulfilled their responsibilities.
It is not unusual for a settlor to create a trust designed to maintain the beneficiary in "comfort", or words to that effect. Even in cases where the terms of the trust give the trustees "sole" or "absolute" discretion, terms such as "comfort" limit this discretion by furnishing boundaries past which the trustee cannot go except *938 at peril of being found to have abused his discretion. As one court put it: "A trust conferring upon the trustees power to distribute income and principal in their absolute discretion" but which provides standards by which that discretion is to be exercised with reference to the needs of the trust beneficiary for education, care, comfort or support, it is neither a purely discretionary trust nor a strict support trust... ." Martin v. Martin, 54 Ohio St.2d 101, 374 N.E.2d 1384, 1389-90 (1978).
"Comfort" means different things to different people. Where it appears in a trust document, however, courts have generally held the settlor "intended to provide for the maintenance of the beneficiary in the social and economic position in which the latter had been living at the time of the creation of the trust... ." 8 G. Bogert, The Law of Trusts and Trustees, § 811 (Rev.2d ed. 1981). See also, e.g., Blodget v. Dulaney, 201 F.2d 589, 593 (1st Cir.1953); Equitable Trust Co. v. Montgomery, 28 Del. Ch. 389, 44 A.2d 420, 423 (1945); Amoskeag Trust Co. v. Wentworth, 99 N.H. 346, 111 A.2d 198, 200 (1955); Kuykendall v. Proctor, 270 N.C. 510, 155 S.E.2d 293, 301 (1967).
Similarly, one court held that where a trust beneficiary had an income of just under $10,000 and the trustees made payments to him of $4205 at a time when the trust had accumulated $30,000 in income, the payments were not sufficient to maintain the beneficiary in "comfort" in accordance to the terms of the trust. Old Colony Trust Co. v. Rodd., 356 Mass. 584, 254 N.E.2d 886, 889-90 (1970).
Therefore, it becomes necessary to determine what Margaret Coolidge Sturtevant understood as "comfort". GNB produced testimony to the effect that Mrs. Sturtevant did not live extravagantly, and that to her "comfort" was synonymous with the necessities of life.
The chancellor was clearly unconvinced by the bank's position, as well he might have been. Mrs. Sturtevant was clearly well-to-do. There was undisputed testimony that Mrs. Sturtevant travelled frequently to Europe, the Carribbean and Latin America. Testimony over the character of her house was conflicting; there was uncontradicted testimony that the house stood on 8 acres of land, but the witnesses differed as to whether or not it could be considered modest. The bank's rebuttal brief admits that she had several domestic servants, but asserts that this was only after she became too ill to care for herself. This was flatly denied by David's witness Grover Tallon, who said she had had the servants even before she became ill. On appeal, we must assume that the chancellor resolved all of these factual disputes in favor of David.
The bank counters by pointing out that David has failed to seek part-time employment; rather that he has chosen to live in California and he has failed to pay his taxes and has undertaken to support another person, David Speh. In short, the bank argues that David Sturtevant is one of those "who have produced the necessity which they plead." Prewitt v. Land, 36 Miss. (7 Geo.) 495, 507 (1858).
The record is devoid of any indication that David Sturtevant possesses any marketable skills. If he were to secure part-time employment, the record contains nothing to support an inference that additional payments under the trust would not be necessary to maintain him in "comfort". As for the other matters, they are simply irrelevant. If the trustees have paid him less than the trust requires, it does not excuse them that he has used even that little foolishly. David currently receives $700 per month under the trust. There was uncontradicted testimony that this amount is entirely consumed in paying the rent on an unattractive apartment and in buying groceries. The bank can succeed only if "comfort" is interpreted as excluding anything above the level of bare subsistence. Such a definition is scarcely reasonable.
In short, the chancellor found as a fact that David could not subsist in comfort on $700 per month. That finding, like any other chancellor's finding of fact, is entitled to the benefit of our well-known rule that a chancellor's finding of fact will not *939 be disturbed on appeal unless it is manifestly wrong. Suffice it to say there is nothing in this record upon which a conclusion could be based.
The chancellor's decree must be affirmed.
AFFIRMED.
ROY NOBLE LEE, and HAWKINS, P.JJ., and DAN M. LEE, PRATHER ROBERTSON, SULLIVAN and GRIFFIN, JJ. concur.
HAWKINS, and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, and GRIFFIN, JJ., specially concur.
WALKER, C.J., not participating.
HAWKINS, Presiding Justice, specially concurring:
I concur with Justice Anderson, and add a few comments on my own.
Sound judgment and some practical wisdom are needed in the administration of any trust for the benefit of human beings.
First and foremost a trustee should look carefully and endeavor to understand the purposes of the trust. What is the donor trying to accomplish?
In this case the donor set up two trusts for her son and only heir David, in one of which she limited each monthly payment to $200. In the other she directed he be paid "a sum sufficient for his maintenance, comfort and medical expenses." David is not married, has no children, and is unlikely to have any.
These trusts are for the benefit of David, not his estate, and certainly not the trustee.
Of course, the trustee needs to be prudent in discretionary payments to the beneficiary, but not miserly.
It is regretable in this case that it required the sound judgment of a chancellor to see that David's needs were properly addressed.
ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, and GRIFFIN, JJ., join this opinion.