In the Matter of the ESTATE OF Dorothy F. McCART a/k/a Dorothy Frances McCart, Deceased.

Robert D. GOSS, Trustee–Appellant,

v.

Charles H. McCART, Appellee.

No. 91CA0900.

Colorado Court of Appeals, Div. III.

Aug. 27, 1992.

Rehearing Denied Oct. 15, 1992.

Certiorari Denied Feb. 22, 1993.

Naylor & Geisel, P.C., Henry J. Geisel, Pueblo, for trustee-appellant.

Shaw & Quigg, P.C., David B. Shaw, Marc Lassman, Pueblo, for appellee.

Opinion by Judge SMITH.

In this action under § 15–16–201, C.R.S. (1987 Repl.Vol. 6B) concerning the administration and distribution of the Dorothy F. McCart Trust, Robert Goss, Trustee, appeals the order entered in favor Charles McCart, lifetime trust beneficiary. We affirm.

In 1981, Dorothy F. McCart, as settlor and as trustee, and Goss, as the other named trustee, signed a trust agreement. The agreement provided in pertinent part that settlor's spouse, McCart, would be the lifetime beneficiary of the trust and that, upon his death, the trust would be divided 50% to Goss and his descendants and 50% to his brother, David Goss, and his descendants.

McCart and settlor had been married 22 years when settlor died in 1985. In September 1986, McCart remarried.

Following settlor's death and until January 1987, a 16–month period, Goss paid McCart $2000 a month from the trust. From January 1987 through March 1988, McCart was paid $1000 a month. Except for an April 1988 payment, McCart continued to receive this amount until August 1988. Only four payments of $1000 each were made during 1989. In August 1990, payment resumed at $500 a month through January 1991.

The distributions were made under trust provisions which directed Goss, as trustee, to make payments to McCart from the income and principal of the trust. The amounts and frequency of the payments were left to the sole discretion of the trustee. However, concurrent with this grant of authority to the trustee, the trust expressly provided that it was settlor's "wish" that McCart have liberal access to the funds of the trust. The trust provi-

sions further suggested to the trustee that preservation of the trust principal was not as important as the accomplishment of the following objectives: (1) that the trust provide for the comfortable support, medical care, and other benefits of settlor's spouse, having regard for his other means of support, and (2) that the trust provide settlor's spouse with the standard of living to which he was accustomed.

Because of Goss' irregular payments, McCart petitioned the trial court to construe the distribution provisions of the trust and to have payments reestablished on a regular basis. Goss also petitioned for construction of these terms, acknowledging that the trustee and beneficiary had had some differences of opinion regarding the discretionary distributions from the trust.

Following an evidentiary hearing, the trial court found and concluded that: "[T]he [court] must take the extraordinary step of interfering with the trustee's discretion because it has been abused through actions improperly motivated by the self-interest of the trustee." Consequently, the court found that McCart was "owed" money from the trust for the years 1987 through 1990 and that, beginning in 1991, the trust must supplement McCart's income to the extent necessary to provide a standard of living comparable to that enjoyed by him during the years 1982 to 1985. The monetary value of this standard was fixed by the court.

Moreover, the court directed that, only if income attributable to McCart's wife exceeded this fixed amount would the spouse's income become relevant in calculating McCart's monthly distribution. Finally, the trial court ruled that Goss, individually and personally, should bear the attorney fees and costs incurred in the trial proceedings.

## I.

McCart initially contends that Goss lacks standing to appeal the trial court's order because he, too, sought assistance from the court in interpreting the trust provisions, and thus, he was not an "aggrieved party."

It is undisputed, however, that Goss occupies two roles under the trust agreement: he is both trustee and remainderman. Inasmuch as the trial court's order substantially increased the distribution under the trust to the lifetime beneficiary, McCart, the order clearly impacts the size of the trust estate and, hence, Goss' remainder interest. Accordingly, Goss, unlike the executor in *Wilson v. Board of Regents*, 46 Colo. 100, 102 P. 1088 (1909), has an appealable interest in the court's order.

## II.

Goss contends that the trial court erred in interfering with the exercise of his powers under the trust.

### A.

First, Goss argues that the trial court erred in finding and concluding that he abused his discretion in making distributions under the trust. We disagree.

The crux of Goss' argument is that the trust agreement granted him "sole" and "absolute" discretion over distributions from the trust.

The record reveals that the trial court acknowledged Goss' authority under the trust. Nonetheless, the trial court specifically found and concluded that Goss had abused his discretion and acted arbitrarily and capriciously. The trial court based this conclusion on explicit and detailed findings that Goss, in his capacity as trustee, had acted with improper motives and with a clear conflict of interest as trustee by seeking to conserve the trust funds for himself and his heirs as remaindermen under the trust and also in breach of his fiduciary responsibilities to act with the utmost good faith and fairness toward the beneficiary, McCart.

The record further reveals that, as a basis for these findings, the trial court relied not only on statements attributable to Goss but also on Goss' actions. Specifically, the trial court cited Goss' "obvious"

anger that McCart had enjoyed the benefit of settlor's generosity during her lifetime and his "obvious" resentment over McCart's remarriage and his perception that, with his remarriage, McCart had other income and assets to provide for him while the trust was being conserved for Goss, his brother, and their descendants. The trial court also noted that Goss' undisputed diminishing and sporadic distributions to McCart beginning in 1987, the year following McCart's remarriage, were further evidence of Goss' improprieties, conflict of interest, and breach of fiduciary duties.

■ The trial court's findings clearly support a determination that Goss abused his discretion in the exercise of his powers as trustee under the trust. *See generally* A. Scott, *Trusts* § 187 (3d ed. 1967). The findings are, moreover, based on evidence in the record and, thus, will not be disturbed on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

### B.

■ Next, Goss argues that the trial court erred in determining both what money was "owed" by the trust to McCart and how much the trust should currently and in the future "pay" McCart. Goss' argument, in essence, is that past, present, and future payments should be contingent on McCart's reasonable "expenses."

The trial court rejected this argument, however, on the basis that not only was such an arrangement unworkable, the trust agreement contained no language requiring this consideration.

Indeed, the clear language of the trust is that the trust "provide [McCart] with a standard of living [to which] he is *accustomed....*" (emphasis added)

We conclude, as did the trial court, that no inference arises from this language that the trustee has been vested with discretion to control and dictate McCart's standard of living. Rather, the language directs the trustee to maintain, not ascertain, a standard of living calculated upon a *non-varia-*ble factor, settlor's and McCart's years together.

The record reveals that the trial court had extensive financial information to arrive at this factor and thereby to determine the proper formula for disbursements. This information included a catalog of settlor's and McCart's expenditures and income for the years 1982 through 1985 which the court averaged to arrive at expenses of approximately $4668 per month.

Attributing half to McCart, the court arrived at a specific fixed figure for future distributions of $2334 per month. The record further reveals that the trial court averaged expenditures incurred by McCart and his wife's expenses and income in order to determine that the current spouse's income was not, as yet, a factor in McCart's monthly distribution. Finally, taking into consideration that McCart had depleted his assets by engaging in capital gains transactions in order to meet his expenses and that Goss had previously agreed and was willing to pay a sum of $2000 per month for the 16 months prior to January 1987, the trial court concluded that the trust "owed" McCart an amount equivalent to $2000 per month for 1988, 1989, and 1990.

■ Having found an abuse in Goss' exercise of his discretion under the trust, the trial court was warranted in exercising its discretion to fashion a remedy both to repair past abuse and to control the future exercise of Goss' discretion under the trust. *See generally Stallard v. Johnson*, 189 Okl. 376, 116 P.2d 965 (1941); *Gulf National Bank v. Sturtevant*, 511 So.2d 936 (Miss.1987).

Inasmuch as the remedy here is consistent with the provisions of the trust and is supported by evidence introduced at trial, we perceive no error in the trial court's determination regarding either payments "owed" or payments "to be paid" from the trust.

### III.

Next, we reject as without merit Goss' contention that the trial court erred in or-

dering him to bear the attorney fees and costs, personally and individually.

A trustee is entitled to indemnity only for expenses incurred for the benefit of the trust estate *if the litigation is not the result of his own fault.* A. Scott, *supra,* § 244.

Here, the trial court specifically found and concluded that Goss had acted arbitrarily, capriciously, and in his own self-interest in violation of his fiduciary duties. Consequently, under the foregoing principle, Goss was clearly not entitled to the indemnity he requests.

The judgment is affirmed.

CRISWELL and ROTHENBERG, JJ., concur.