# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00720-COA

**BERNICE M. RUTLAND**                                                    **APPELLANT**

**v.**

**REGIONS BANK AS TRUSTEE OF THE**                       **APPELLEE**
**WILLIAM HUNTER RUTLAND FAMILY**
**TRUST**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2022 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | J. F. VALLEY |
| ATTORNEY FOR APPELLEE: | JOHN HOUSTON DOLLARHIDE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 01/16/2024 |
| MOTION FOR REHEARING FILED: | |

### BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     Twenty-eight years before his death, a man created a trust to benefit his children. After he died, the widow sought funds from the trust to pay his funeral expenses. The trustee declined and sought a declaratory judgment, claiming it did not have to pay any expenses. The widow counterclaimed, arguing that the trust had been terminated by virtue of her deceased husband's prior divorce and that it should be disbursed in part to his estate.

¶2.     The trial court granted summary judgment to the trustee after finding that the trust was irrevocable, was not terminated, and that the contents of the trust should be disbursed to his children. Upon review, we affirm.

### BACKGROUND

¶3.    In 1991, William Hunter Rutland established an "Irrevocable Trust."  By its own terms, it declared that "[t]his trust is and shall be irrevocable."  The Trust was for the benefit of four people:  his wife at the time, Joanne, and their three children, Melanie, William Jr., and Lady.[1]

¶4.    William was defined as "the Creator" and Joanne as "the Creator's wife."  "In making distributions of income and principal after the death of the Creator," the Trust set out that "the Trustee shall consider the Creator's wife as the primary beneficiary and consider her needs above those of the other beneficiaries[.]"

¶5.    The Trust was very detailed and included a defined series of terms as to how it was to be administered, what it covered, and what it didn't.  It set out that "during the lifetime of the Creator, no principal shall be distributed to or for the benefit of the Creator or the Creator's wife."  In other words, it was only upon William's death that any contents would be paid.  After William and Joanne died, the Trust was to be divided "into equal and separate shares" for each child if they had reached 25 years old.

¶6.    Over its nearly two dozen pages, the Trust also set clear limitations.  For instance, it forbade by its own terms the "enabl[ing] [of] the Creator to borrow all or any part of the principal or income of the trust, directly or indirectly."  And while the principal of the Trust could not be diminished, the trustee could "[m]ake loans to the Executor or Administrator of the estate of the Creator or the Creator's wife" in order "to facilitate payment of

_____

[1] While the Trust names her as Joanne, in court papers and other matters she is called Jo Ann.  Because this case is about the interpretation of the Trust, we will use the language used within that document.

administrative expenses, debts, estate, inheritance or other death taxes[.]"

¶7.     The Trust also had an end date: "Upon distribution of the entire trust estate to the beneficiary or beneficiaries thereof, the trust shall terminate."

¶8.     As shown by an affidavit included in the record, executed by an assistant vice president of the trustee bank, the Trust was funded by a life insurance policy. As this uncontested proof showed, "[t]he only asset of the Trust concerned a life insurance policy issued . . . on Mr. Rutland's life." "When he was alive, the Trust was the named beneficiary of the Policy," the affidavit recounted.

¶9.     In 2010, after decades of marriage, William and Joanne divorced. Three years later, she passed away. After his divorce, William married the former Bernice McWhorter, whom he was married to until his death in 2019. After he passed, pursuant to a life insurance policy, the insurer "issued a death benefit check . . . for $495,120.26." It was made out to the "William Hunter Rutland Family Trust Dated 04/12/1991."

¶10.    From the record, it appears that afterward, Bernice called the office of the trustee. According to her allegations, she "was assured that the final estate expenses would be paid from the trust." At some point, the Trust reversed course and declined to pay for William's funeral.

**PROCEDURAL HISTORY**

¶11.    The trustee later filed a petition for declaratory judgment, naming Bernice and the three beneficiaries as defendants. It requested four core areas of relief: first, a judgment that the Trust would not have to pay for the administration of William's estate; second, a ruling

3

that the 2010 divorce between William and Joanne did not impact the Trust; third, that the Trust should be allowed to pay the beneficiaries the proceeds of William's life insurance policy "less the expense of the administration of the Trust;" and it also prayed for general relief.

¶12.    Bernice answered the suit with a counterclaim. She argued her belief the Trust should pay her late husband's funeral expenses. She also pitched a novel theory: "That because the trust, which was bought with marital property, was divided in the divorce settlement" between William and Joanne, then "the proceeds, after deduction for appropriate expenses," should be paid into their separate estates. And Bernice was the executor of William's estate, so she should recover from the insurance instead of it funding the Trust.

¶13.    Soon thereafter, the trustee sought summary judgment. The trial court conducted a hearing via video conference and heard from counsel for the parties. The core argument by the trustee was that Bernice "has not provided any evidence that would allow this Court to revoke this irrevocable Trust or to establish that there is any material issue of fact here."

¶14.    In response, counsel for Bernice argued that the life insurance policies held by William at the time of divorce were divided as marital property. "[I]n our view," he argued, the trial court "attempt[ed] to divide or did divide the asset that was allegedly in this Trust." Since "there was a division of this Trust asset 50/50 between Mr. Rutland" and Joanne, the Trust should not have been funded by the insurance policy.

¶15.    The trial court was unpersuaded. "In Mississippi, there are several ways in which an irrevocable trust can be terminated," the trial court reasoned, analyzing the statute and

4

precedent. This includes if all qualified beneficiaries agreed to terminate it during the creator's lifetime; if the creator is the sole beneficiary and wishes to terminate it during their lifetime; if all qualified beneficiaries agree to terminate the trust after the creator's death; or "if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration." The circuit court reviewed other known ways of ending an irrevocable trust.

¶16. In the end, the trial court found that none of these enumerated situations applied. The Court held "that there is not sufficient evidence to show that the trust was dissolved/terminated in the divorce proceeding," and "no evidence to show that the trust was dissolved/terminated through any of the legal procedures that allow for the termination of said trust." "Absent a showing that the trust was terminated," the trial court found the trust to be irrevocable and its terms to be strictly followed. The Court then granted summary judgment in favor of the trustee.

¶17. Undeterred, Bernice sought reconsideration. She leaned heavily into letters and other exhibits culled from the divorce of her late husband from his first wife, ignoring the trial court's ruling that the statute controlled and continuing to argue that the insurance policy that funded the Trust was split by the divorce.

¶18. The trial court denied the motion. In doing so, it recounted details from the divorce action between William and Joanne and a subsequent petition for contempt. Rejecting Bernice's claims of inequity, the trial court held "[i]t is not unmistakable, clear, plain, or indisputable to this Court that allowing the beneficiaries to inherit the Trust that the decedent

5

created for their benefit would result in any kind of injustice."

¶19. Bernice appealed, and the case was assigned to us for review.

## DISCUSSION

### I. Summary judgment was properly granted, as the Trust was not modified or terminated by the divorce.

¶20. Bernice raises a single issue on appeal: that "the trial court committed reversible error in granting summary judgment after doing its own fact-finding research to resolve material facts which remain in dispute and refusing to permit reasonable discovery."

¶21. To be clear, she does not take issue with the trial court's substantive finding that the Trust was irrevocable and could not have been dissolved by the divorce. Instead, her argument is procedural in nature, claiming "[t]he trial court forbade discovery which cut-off the appellant from information which would have amplified her case."

¶22. We start at the foundation of our law on trusts. "[I]t is well known that a trust must be administered according to the intent of the settlor." *Gulf Nat'l Bank v. Sturtevant*, 511 So. 2d 936, 937 (Miss. 1987). As the Supreme Court has explained, the "administration of a trust must accord strictly with the intent of the settlor and the terms of the trust[.]" *In re Est. of Smith v. Boolos*, 204 So. 3d 291, 315 (¶58) (Miss. 2016) (quoting *Reedy v. Johnson's Est.*, 200 Miss. 205, 210-11, 26 So. 2d 685, 687 (1946)). This general rule is so strong that "ordinarily even a court of equity has no authority to authorize the trustee to depart therefrom, and will do all within its power to see that the trust is executed in accordance with its terms[.]" *Id*.

¶23. Likewise, our law recognizes that "[t]he interests of the beneficiaries are paramount,

6

and *nothing* should be done that would diminish their rights under the terms of the agreement and granted by law." *Wilbourn v. Wilbourn*, 106 So. 3d 360, 371 (¶35) (Miss. Ct. App. 2012) (emphasis added).

¶24.    We keep this law in mind as we review de novo both the decision of the trial court and the record, as this case was dismissed by summary judgment. *Turner & Assocs. P.L.L.C. v. Est. of Watkins ex rel. Watkins*, 357 So. 3d 1087, 1092 (¶13) (Miss. Ct. App. 2022). To the extent Bernice argues the trial court was in error by precluding further discovery, we review for the abuse of discretion. *Morton v. City of Shelby*, 984 So. 2d 323, 342 (¶46) (Miss. Ct. App. 2007) (holding that "control of discovery is a matter committed to the sound discretion of the trial judge").

¶25.    The Trust in this case is governed by the Mississippi Uniform Trust Code. *See* Miss. Code Ann. §§ 91-8-101 & -102 (Rev. 2021). While it was created prior to the UTC's implementation in 2014, the law "applies to all judicial proceedings concerning trusts commenced on or after July 1, 2014," as this one was. Miss. Code Ann. § 91-8-1106(a)(2) (Rev. 2021).

¶26.    The very terms of the Trust declare it to be irrevocable—indeed, the title of the document is "IRREVOCABLE TRUST AGREEMENT." It also meets the terms under State law to be a "noncharitable irrevocable trust," as it did not generate a charitable deduction for William and was not for the benefit of a charity.[2] The express purposes of the Trust were to

---

[2] *See* Miss. Code Ann. § 91-8-411(3)(1)-(2) (Rev. 2021) (defining a "noncharitable irrevocable trust" as one where "No federal or state income, gift, estate or inheritance tax charitable deduction was allowed upon transfers to the trust" and "The value of all interests in the trust owned by charitable organizations does not exceed five percent (5%) of the value

provide for the listed beneficiaries and to avoid taxes on William's estate.

¶27. Bernice's claim centers on whether the divorce between William and Joanne ended the Trust or, more precisely, whether the division of the assets between the two could have somehow dissolved the Trust. Yet once created, a noncharitable irrevocable trust may only be modified or terminated in certain defined ways. *See* Miss. Code Ann. § 91-8-411 (Rev. 2021) (establishing several methods).

¶28. We confine our analysis to the part of the statute that addresses how the Trust could have been modified or dissolved while William was still alive, as Bernice argues the operative point was his divorce from Joanne.[3]

¶29. "During the settlor's lifetime, a noncharitable irrevocable trust may be modified or terminated by the trustee *upon consent of all qualified beneficiaries*, even if the modification or termination is inconsistent with a material purpose of the trust *if the settlor does not object to the proposed modification or termination*." Miss. Code Ann. § 91-8-411(a) (emphasis added). This method does not require the approval of a court, even though "the trustee may seek court approval of a modification or termination." Miss. Code Ann. § 91-8-411(f).

of the trust."

Furthermore, by its own terms the Trust only benefitted the children of the creator, a defined class of three people. *See Allgood v. Bradford*, 473 So. 2d 402, 412 (Miss. 1985) (In contrast, "Charitable corporations . . . have as their goal the improvement of the welfare of others"); *Charitable*, Black's Law Dictionary 233 (6th ed. 1990) (Charitable gifts are those for the "benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint").

[3] There are other ways an irrevocable trust may terminate, such as situations "[f]ollowing the settlor's death," as set out by Miss. Code Ann. § 91-8-411(b), or where "because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust," as described in Miss. Code Ann. § 91-8-412(a).

8

¶30. As the trial court concluded, this subsection cannot apply, as *all* the beneficiaries did not consent to the Trust's modification or termination. Even taking Bernice's position that both William and Joanne intended for the Trust to be modified or terminated upon their divorce, there is nothing in the record to suggest the other beneficiaries, their three children, agreed in any way. Therefore the Trust was not modified or dissolved pursuant to subsection (a).

¶31. The statute also allows modification or dissolution when a partial number of the beneficiaries seek this remedy. Miss. Code Ann. § 91-8-411(d). In contrast to subsection (a), which can be done without court approval, subsection (d) expressly requires a trial court's authorization and oversight. *Id.* "[T]he modification or termination may be approved" if two factors are met: "If all of the qualified beneficiaries had consented, the trust could have been modified or terminated under this section; and . . . [t]he interests of a qualified beneficiary who does not consent will be adequately protected." Miss. Code Ann. § 91-8-411(d)(1)-(2).

¶32. Even assuming William and Joanne intended for the Trust to be modified or dissolved upon their divorce, the issue was not placed before a trial court for its approval. Therefore the Trust could not have been modified or dissolved pursuant to subsection (d).

¶33. The trial court thoroughly reviewed these two statutes as well as multiple other methods that trusts may be dissolved that do not fit the facts of this case, such as when a trust has a total value less than $150,000, or the value of the trust does not warrant costs of administration. The trial court found that none of these situations applied. Accordingly, the

trial court rejected Bernice's argument that the divorce between William and Joanne could have terminated the trust via their divorce.

¶34. The trial court held "there was no evidence presented that any of the other beneficiaries to the trust consented and agreed to the termination of the trust," and "no evidence presented to the Court that any trustee ever acted to terminate the trust for any reason." Since there was "no evidence to show that the trust was dissolved/terminated through any of the legal procedures that allow for the termination of said trust," the trial court granted the motion for summary judgment.

¶35. After de novo review, we agree with the trial court. There was no competent evidence presented to the trial court that the beneficiaries or the trustee sought to modify or dissolve the Trust. There was no sworn evidence presented to the trial court that any of the beneficiaries or the trustee wanted to modify or dissolve the Trust either. And Bernice did not point to any evidence that was lacking on this point that would have precluded the grant of summary judgment. Bernice does not claim that she could have obtained any information that would have triggered the applicable statutes governing modification or termination.

¶36. The purpose of Bernice's core argument is clear. If the trial court had accepted her position, the Trust would have been defunded; she expressly asked then for the trustee to tender "half of the proceeds to the estates of William Hunter Rutland, Sr.," of which she was executor, and half to his ex-wife, "after first paying the lawful expenses of the estate of William[.]" Yet the whole point of the Trust in the first place was to avoid *just such a scenario*. Once created by William, the Trust would survive beyond his control and his death

10

in order to provide for beneficiaries. Bernice asks the court system to reject the express terms set in place by William in 1991 that he meant to benefit his children.

¶37. There is no authority upon which to do so. In contrast, and as explained above, our law recognizes "[t]he interests of the beneficiaries are paramount, and *nothing* should be done that would diminish their rights under the terms of the agreement and granted by law." *Wilbourn*, 106 So. 3d at 371 (¶35) (emphasis added).

¶38. Nor does her argument that it is somehow "inequitable" for us to follow the terms of the Trust have any foundation, especially as there are no statutory or common law grounds for its termination or modification. It is a longstanding "rule generally that the 'administration of a trust must accord strictly with the intent of the settlor and the terms of the trust,'" so "ordinarily *even a court of equity has no authority to authorize the trustee to depart therefrom, and will do all within its power to see that the trust is executed in accordance with its terms*[.]" *Boolos*, 204 So. 3d at 315 (¶59) (quoting *Reedy*, 26 So. 2d at 687) (emphasis added); *see also* Miss. Code Ann. § 91-8-106 ("The common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this state").

¶39. And Bernice's argument heavily rests upon something that did not happen. She insists that the divorce between William and Joanne split the insurance policy which was designated to fund the Trust. But upon William's death, the uncontested proof was that the applicable insurance policy did indeed pay out and fund the Trust. Bernice focuses nearly her entire argument on why that should not have happened given her strained interpretation of the

11

meaning of her late husband's divorce, but upon William's death, the insurance company promptly wrote a check payable to the Trust. It was deposited, and the Trust was funded with the proceeds from the insurance policy.

¶40. We find this ruling was based on the interpretation of statute and the express terms of the Trust, so no further discovery was necessary before the trial court issued its ruling. While Bernice now complains that "[t]he trial court should have permitted Mrs. Bernice Rutland to engage in reasonable discovery," this ignores that the trial court did allow an extension of time and some discovery. Bernice properly sought an extension of time to respond to the motion for summary judgment pursuant to Mississippi Rule of Civil Procedure 56(f) (requiring the affidavit of an attorney to support a request for a continuance to respond). In part, she claimed that she wanted to take the depositions of certain witnesses. However, the trial court only allowed "limited 56(f) relief only to produce relevant documents" and an extension of time to respond to the motion, likewise continuing the hearing date.

¶41. On appeal, Bernice does not show how the testimony of any witness would have impacted the trial court's interpretation of the Trust or state law. To the extent Bernice claims it was error for the trial court to curtail her attempts to conduct more discovery before granting summary judgment, "[t]he control of discovery is a matter committed to the sound discretion of the trial judge." *Morton*, 984 So. 2d at 342 (¶46). And Bernice did not show how any additional discovery would have impacted the trustee's request for summary judgment. So "any disputed facts that additional depositions might have revealed would not have been *material* facts under Rule 56," and therefore the trial court did not abuse its

discretion in denying further discovery. *Holloway v. Nat'l Fire & Marine Ins. Co.*, 360 So. 3d 671, 677 (¶15) (Miss. Ct. App. 2023) (emphasis in original).

¶42. Bernice also claims that the trial court made "a factual determination regarding the trust"—that the 2010 divorce did not impact it—and that the trial "court did the research to resolve the fact on its own." This misses the mark. First, the determination of whether the divorce impacted the Trust was a *legal* determination, one which the trial court analyzed at length before holding that this irrevocable trust was not impacted by a divorce. This was the crux of the trial court's ruling on summary judgment.

¶43. Second, it was Bernice herself who continued to argue that the various documents and letters surrounding William and Joanne's divorce warranted modification or termination of the Trust. Bernice attached these materials to various pleadings and continued to argue they applied. She cannot now complain the trial court committed error by reviewing the docket of the divorce to see if it impacted the claims in this case. *See, e.g.*, *Edwards v. State*, 441 So. 2d 84, 90 (Miss. 1983) (stating that "[i]t is an old principle that an attorney who invites error cannot complain of it").

¶44. Relatedly, Bernice argues the trial court went on "a fact-finding mission on its own" into the divorce file. Yet this critique appears focused on the trial court's motion to reconsider, not the grant of summary judgment. As set out above, Bernice does not point to any genuine material issue of fact in the record warranting reversal of the grant of summary judgment. And like the case at hand, the divorce was filed in Coahoma County Chancery Court, and it is well-settled that a "trial court may take judicial notice of available evidence

13

in its own court files." *In re J.C.*, 347 So. 3d 1188, 1194 (¶12) (Miss. Ct. App. 2022) (internal quotation marks omitted); *see Peden v. City of Gautier*, 870 So. 2d 1185, 1186-87 (¶¶3, 7) (Miss. 2004) (where "in a separate and subsequent action" it was proper for a trial court to take judicial notice of a prior "three-volume record in the annexation case" preceding the dispute).

¶45.    We find no error and affirm.

**II.    All other issues are procedurally barred.**

¶46.    In her reply brief, Bernice presents a much more nuanced series of arguments in addition to the single argument in her principal brief, which only argued that summary judgment should not have been granted as more discovery should have been conducted. In her Reply, she lists three issues: "Upon What Evidence Did the Trial Court Rely for Proof of Funding the Trust?"; that the "Trial Court Erred in Taking Judicial Notice without giving parties an opportunity to be heard"; and that the co-trustee "Gwendolyn Kyzar was a Necessary Party to this Litigation."

¶47.    This does not conform to our Rules of Appellate Procedure. Our Rules required a "Statement of Issues," and "[e]ach issue presented for review shall be separately numbered in the statement." MRAP 28(a)(3). "No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified." *Id.* These three new issues did not appear in Bernice's principal brief.

¶48.    In a recent case from the Supreme Court, they found an argument was barred when

14

parties "did not raise this issue in their principal appellate brief." *Biegel v. Gilmer*, 329 So. 3d 431, 433-34 (¶11) (Miss. 2020). It further held that as a general rule it "does not consider issues raised for the first time in an appellant's reply brief." *Id*. at 434 (¶11) (internal quotations omitted). "This issue is procedurally barred," the Court determined. *Id*.; *see Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996) (first applying this procedural bar as "a fitting and obvious rule" since "[a]ppellants cannot be allowed to ambush appellees in their Rebuttal Briefs, thereby denying the appellee an opportunity to respond to the appellant's arguments").

¶49. In accord with our Rules of Appellate Procedure and this precedent, we find Bernice's three different issues raised for the first time in her Reply brief are procedurally barred.

## CONCLUSION

¶50. For the reasons set out above, we affirm the grant of summary judgment. There was no proof that the Trust created by William in 1991 was modified or terminated by his subsequent divorce. No further discovery would have revealed any material evidence on this point. Furthermore, it was not improper for the trial court to review prior proceedings upon its docket when this was the central thrust of Bernice's argument.

¶51. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**

15